IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Todd Zielinski,                                             Case No. 3:08CV2077

          Plaintiff,

         v.                                               ORDER

Interstate Brands Corporation,

          Defendant.


Plaintiff, Todd Zielinski, brings this employment discrimination and retaliation case against Interstate Brands Corporation [IBC]. Zielinski seeks damages against IBC for age discrimination and for illegal retaliation based on a complaint he made to his union.

Pending is IBC's motion for summary judgment. [Doc. 27]. For the reasons discussed below, the motion is granted.

**Background**

From 2001 to 2007, IBC employed Todd Zielinski as a truck driver at its Northwood, Ohio bakery. During that time, IBC began suspecting truck drivers of abusing its time log

1

system. The system allows drivers to take a fifteen minute break for every two hours a driver works, and compensates drivers if they forgo these breaks.

After suspecting drivers of falsely reporting their breaks, and to ensure drivers were reporting breaks accurately, IBC's distribution manager, Ron Durbin, decided to conduct surveillance of some drivers. Durbin began following drivers on their routes and keeping notes to compare actual break times with break times claimed in the drivers' daily log sheets. After these investigations, IBC terminated several drivers for claiming that they did not take breaks when, in fact, they had.

In December, 2006, Zielinski filed a complaint with his union, in which he claimed that IBC treated truck drivers differently than other employees. Zielinski claimed that IBC required drivers restrictively to manage their unproductive time, and report all time not actively working as "break time," while other bakery employees were afforded time to smoke and take other unreported breaks. In his union complaint, Zielinski alleged IBC closely scrutinized the drivers to justify firing them, and did so to save the company money it would otherwise owe the drivers in paid vacation time.

In January, 2007, Durbin issued a memo to truck drivers, warning them to drive their routes in the most efficient way possible and accurately report all breaks in their daily log sheets. The memo also reminded drivers of IBC's "zero tolerance policy" regarding falsification. This policy, which reflected a provision in the collected bargaining agreement concerning dishonesty, reminded drivers that dishonesty remained an immediately terminable offense.

Following the warning, Durbin conducted surveillance on two drivers, whom he subsequently terminated for falsification of log sheets. The drivers, age forty and forty-six, were younger than Zielinski at the time of their termination.

Durbin later followed Zielinski on May 27 and April 3, 2007. After the May 27th run, Durbin determined that Zielinski took approximately one hour of breaks, but claimed only fifteen minutes in his log sheet. Similarly, on April 3rd, Durbin reported that Zielinski spent about one hour on break, but reported only thirty minutes. On April 9th, Durbin submitted a memo to IBC's human resources department outlining his observations.

On May 17th, Durbin and human resources manager Brandy Dunn met with Zielinski and his union representative. At the meeting, Durbin confronted Zielinski about the unaccounted for time. Zielinski failed to explain the lapses. adequately Following the meeting, IBC suspended Zielinski for "[d]ishonesty, falsification of log sheets and falsification of time/payroll records." [Doc 27-3, at 53]. On July 2nd, IBC terminated Zielinski. Following his termination, Zielinski's union contested the termination in arbitration, but the arbiter upheld his termination.

When terminated, Zielinski was fifty-two years old.

On April 20, 2007, before Zielinski's suspension and termination, but after Durbin's observation of Zielinski's apparent falsification, IBC offered a job to Keith Burrey, age forty-two. Though Burrey initially declined, he eventually accepted employment with IBC the day before IBC suspended Zielinski. Following Zielinski's termination, IBC hired Leland Hall, age forty-seven.

Following his termination, Zielinski filed the instant suit, claiming that IBC fired him: 1) in retaliation for his December, 2006 complaint about unequal treatment of drivers; and 2) due to his age.[1]

## Standard of Review

A party is entitled to summary judgment under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id*. at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, a court accepts the opponent's evidence as true and construes all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex*, *supra*, 477 U.S. at 323.

---

[1] Zielinski's complaint asserts state and federal age discrimination claims. Because he acknowledges that his state age claim is barred, I consider only his federal age claim.

**Discussion**

**I. Zielinski's Age Discrimination Claim**

The Age Discrimination in Employment Act [ADEA], 29 U.S.C. § 623(a)(1), prohibits employers from failing or refusing to hire, discharging, or discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *See generally e..g.,Geiger v. Tower Automotive*, 579 F.3d 614, 620 (6th Cir. 2009). An ADEA plaintiff may prove discrimination through either direct or circumstantial evidence. *Id.* Zielinski has offered evidence and arguments under both theories.

Zielinski provides, as evidence of direct discrimination, the affidavit of Susan Schunk. Schunk worked at a desk next to Durbin, and overheard several conversations between Durbin and Kristen Douge, IBC's assistant human resources manager, relating to the age of truck drivers. Schunk summarized the conversations in her affidavit:

> On approximately 5 occasions during the year I worked for Mr. Durbin, I heard him talking with Kristen Douge about how much money the company would save by terminating older drivers and hiring younger drivers. I heard them talk specifically about how much money they could save on vacation time from the termination of older drivers, in that older drivers accrue far more vacation time each year than new drivers do.

[Doc. 37-2].

Zielinski also points to the circumstance that IBC replaced him with a younger driver.

For the reasons discussed below, I find Zielinski's evidence insufficient to support an ADEA claim.

**A. Direct Evidence**

IBC argues that, because Durbin's statement to Douge did not identify Zielinski, but spoke of older drivers generally, it does not support his age discrimination claim. Although I believe the evidence does support a finding that IBC intentionally discriminated against all drivers, a class to which Zielinski belonged, I agree that it is insufficient to support Zielinski's claim.

Zielinski cites *Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d 544 (6th Cir. 2004), as support for his argument that Durbin's statement meets his initial burden of proof. In that case, however, the Sixth Circuit held general statements about decreasing the age of an employer's workforce insufficient to state an ADEA claim. *Id.* at 548 While these statements showed age bias against the workforce as a whole, and helped plaintiffs' circumstantial case, the statements, standing alone, did not prove age bias against the individual plaintiffs. *Id.*

The situation here replicates that in *Rowan*. Zielinski's evidence of a concern with the cost of older, as against younger drivers is not direct proof of age animus as to him individually. Those statements may point generally to an anti-older worker mindset, and, thus provide circumstantial proof, they do not prove that age motivated the employer to terminate him individually.

### B. Circumstantial Evidence

#### 1. *Prima Facie* Case

To establish sufficient evidence sufficient to support a *prima facie* case of age discrimination, Zielinski must show he was: 1) a member of a protected group; 2) subject to an adverse employment decision; 3) qualified for the position; and 4) replaced by a person outside of the protected class. *E.g., Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003).

The protected class normally includes workers over forty years old. *Id*. The final requirement, therefore, ordinarily requires a plaintiff show that he was replaced by someone under forty, but if both the terminated worker and replacement worker are over forty, plaintiff need only prove he was replaced by a "significantly younger person." *Id*. In the Sixth Circuit, a significantly younger person is a worker more than six years younger than the terminated employee. *Id*. at 340.

IBC contests only the fourth element of plaintiff's *prima facie* case: namely whether it replaced Zielinski with a significantly younger worker.

Zielinski contends that IBC replaced him with Kieth Burrey, aged forty-two years at the time of Zielinski's termination. IBC offered Burrey a job, however, on April 20, 2007, and eventually hired him the day before the meeting in which IBC suspended Zielinski. IBC later hired a worker, Leland Hall, who was forty-seven, and thus not significantly younger than Zielinski. *Id*.

Zielinksi alleges that Burrey was hired to replace him. Defendants respond that "Burrey completed an application for employment on March 26, 2007, IBC requested authorization to hire on March 29, 2007, and IBC offered Burrey a job on April 20, 2007, before surveillance was ever conducted on Zielinski." [Doc. 27-1, at 12].

Defendants state that in April, 2007, they decided to conduct surveillance on Zielinski "because of the amount of time it was taking him to complete his transport runs." [Doc 27-1, at 4]. This surveillance began on April 27, 2007. It is, however, undisputed that the defendants had decided to hire Burrey before they focused on plaintiff. Even though Burrey began working after

7

the defendant had decided to fire plaintiff, the defendant company had committed to hiring him before even beginning its investigation into plaintiff's compliance with company requirements.

Thus, Burrey cannot be viewed as a replacement for the plaintiff.[2]

The other comparable, Hall, is less than six years younger than plaintiff. Thus, plaintiff has failed to show that he was replaced by a person outside the protected class. He has not established a *prima facie* case of age discrimination.

### 2. Pretext

Although plaintiff has not established a *prima facie* case, I will assume *arguendo* that he has, and thus will consider whether he has a triable issue of pretext *vis-a-vis* the defendant's articulated reasons for its decision to fire him.

After a plaintiff establishes a *prima facie* case of employment discrimination, the employer may rebut that case by offering a non-discriminatory reason for the employee's termination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000). Plaintiff must then offer evidence sufficient to support a finding the proffered reason is pretext offered to mask discrimination. *Id.*

Zielinski may show pretext either directly, by convincing the trier of fact that it is more likely that IBC terminated him based on age discrimination, or indirectly by showing that IBC's proffered explanation is unworthy of belief. *Johnson v. Interstate Brands Corp.*, 2009 WL

---

[2] The decision in *Baba-Singhri v. Central State University*, 2008 WL 656497, *12 (S.D. Ohio 2008), does not support plaintiff's contention that Burrey was hired in anticipation of firing him. In that case the employer had been having problems with the plaintiff's performance prior to the time it hired the person whom plaintiff claimed had been anticipatorily hired prior to his firing. Here the company had decided to hire Burrey before investigating plaintiff.

3583397, *4 (6th Cir. 2009) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1082 (6th Cir. 1994)).

In the Sixth Circuit, an employer seeking to avoid plaintiff's showing that its reason for termination was pretext need not show that the reason for termination was objectively correct, but only that it had a reasonable basis for its decision to terminate. *See Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998) (discussing pretext in the ADA context); *Bacon v. Honda of America Mfg., Inc.*, 192 F. App'x 337, 345 (6th Cir. 2006) (same in Title VII context). The employer, however, must establish that it reasonably relied on the particularized facts before it at the time of its decision. *Id.*

"'In an age discrimination case, a plaintiff can establish pretext by demonstrating "either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [her] discharge, or (3) that they were insufficient to motivate discharge.'" *Tuttle v. Metropolitan Government of Nashville*, 474 F.3d 307, 319 (6th Cir. 2007) (quoting *Tisdale v. Fed. Express Corp.,* 415 F.3d 516, 529 (6th Cir. 2005)).

IBC offers the evidence collected by Durbin to support its contention that it terminated Zielinski for non-discriminatory reasons. In particular, Durbin followed Zielinski on two occasions, videotaping him and taking notes about his breaks. Durbin then reviewed that tape with IBC human resources personnel, confronted Zielinski with his allegations and terminated Zielinski when Zielinski could not explain the unaccounted for time. The reason given for termination, falsification of log sheets, is a permissible non-discriminatory reason. Zielinski must, therefore, produce evidence sufficient to support a finding that this reason is pretext to survive summary judgment.

Zielinski specifically attacks the procedures used in his investigation and interrogation by Durbin. In particular, Zielinski offers evidence that Durbin: 1) could not have known the exact time at which Zielinski performed activities on his runs, because, due to camera position, Durbin lacked the capacity to see many of Zielinski's activities, and that it was unreasonable for Durbin to believe he had been on break for the time alleged; 2) intentionally lied regarding the amount of product Zielinski delivered to make it impossible for Zielinski to explain the lapse in time; and 3) refused to let Zielinski watch the video surveillance in preclude Zielinski from adequately explaining the footage.

These contentions fail to raise a triable issue of pretext because they show, at most, that the employer may have been mistaken in the inferences that it drew from what Durbin observed. Zielinski's contentions do not undercut the employer's belief that what Durbin saw and recorded constituted evidence that Zielinski falsified his time records.

Zielinski has not shown that a jury could find that it was more likely than not that his age, rather than the employer's conclusion that he was guilty of dischargeable misconduct, led to the loss of his job. Zielinski has not presented evidence that the employer did not, in fact, believe that he was guilty of falsification.

That is what matters – not whether, viewed in hindsight, the employer might have been more thorough in how it came to that conclusion, or even that that conclusion was inaccurate, just that it holds an honest belief in its rationale. *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001). The Sixth Circuit has held that:

> [T]he key inquiry in assessing whether an employer holds such an honest belief is whether the employer made a reasonably informed and considered decision before taking the complained-of action. An employer has an honest belief in its rationale when it reasonably relied on the particularized facts that were before it

10

> at the time the decision was made. [W]e do not require that the decisional process used by the employer be optimal or that it left no stone unturned.

*Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 398 (6th Cir. 2008) .

Zielinski has not produced sufficient evidence that the "process [IBC] used to conduct the investigation was irregular or idiosyncratic." *See id.* The actions of Durbin, while somewhat irregular, were immaterial, as Zielinski has offered no evidence that he made the ultimate discharge decision. *See Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 560 (6th Cir. 2009).

In sum, IBC offered a legitimate, nondiscriminatory reason for terminating Zielinski. Therefore, I grant its motion for summary judgment.

## II. Zielinski's Retaliation Claim

The anti-retaliation provision of the ADEA provides, in pertinent part:

> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this [Act].

29 U.S.C. § 623(d).

To support a claim of retaliation under the ADEA, Zielinski must show that "(1) he engaged in protected activity, (2) this exercise of his protected civil rights was known to the defendant, (3) the defendant thereafter took an employment action adverse to the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action*." Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 544 (6th Cir. 2008).

Zielinski's complaint to the union consisted of:

> State Facts Giving Rise To Grievance: Over the past few years we drivers have been harassed and discriminated by Ron Durbin and other managers at IBC. We are the only employees at the bakery to be singled out for termination. We have been followed, timed and scrutinized down to the minute on what we do. Recently, one driver was suspended for a 13 minute discrepancy. I believe it has been an effort to cut vacation time and I estimate at least $40,000 a year savings on vacation time not paid out. Employees inside the bakery, while on the clock, take extra breaks (one of them being smoking) during an 8 hour shift. Those smokers likely steal more time than what most of the terminated drivers have been accused of, yet they are not followed, timed and scrutinized down to the minute. As stated, it is unfair to terminate employees for what others are being allowed to do.

[Doc. 27-3, at 30].

Zielinski's complaint did not constitute "protected activity" under the ADEA. The ADEA only protects complaints concerning employer activities that themselves violate the ADEA. *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007) (citing *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989)). Zielinski complained solely about the generic, non-age based disparate treatment between bakery workers and truck drivers.

The ADEA does not protect individuals from discrimination based on their job title, but only from discrimination based on age. Although "[t]he burden of establishing a *prima facie* case in a retaliation action is not onerous," *Weigel v. Baptist Hosp.*, 302 F.3d 367, 381 (6th Cir. 2002) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)), it must concern age discrimination, to constitute protected activity under the ADEA. *Fox, supra,* 510 F.3d at 591.

Because the ADEA does not protect Zielinski's complaint about disparate treatment of truck drivers and other workers, I grant IBC's motion for summary judgment on this claim.

**Conclusion**

12

For the foregoing reasons, it is hereby:

ORDERED THAT defendant's motion for summary judgment [Doc. 27] be, and the same hereby is granted.

The Clerk shall enter judgment accordingly.

So ordered.

/s/ James G. Carr
James G. Carr
Chief Judge